# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| JAMES IRA MULLIN and | ) | |
| SHANNON MENECE MULLIN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 2:18-cv-00046 |
| v. | ) | Chief Judge Crenshaw |
| | ) | Magistrate Judge Brown |
| | ) | |
| SOUTHEAST BANK, | ) | |
| | ) | |
| Defendant. | ) | |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court are Defendant's motion to dismiss (Docket Entry No. 27), Plaintiffs' motion for leave to file second amended complaint (Docket Entry No. 39), and Plaintiffs' motion for preliminary injunction (Docket Entry No. 45).  For the following reasons, the Magistrate Judge **RECOMMENDS** that Plaintiffs' motion for leave to file second amended complaint be **DENIED** as futile; that Defendant's motion to dismiss be **GRANTED;** that Plaintiffs' motion for preliminary injunction be **DENIED as moot**; and that this action be **DISMISSED WITH PREJUDICE.**

## I.  INTRODUCTION AND BACKGROUND

On May 31, 2018, Plaintiffs, James Mullin and Shannon Menece Mullin, proceeding *pro se*, filed this action against Defendant, SouthEast Bank, along with an application for leave to proceed *in forma pauperis* and a motion for temporary restraining order to stop the foreclosure sale of Plaintiffs' primary residence.  (Docket Entry Nos. 1-3).  Plaintiffs alleged that in the summer or fall of 2017, Defendant extended a mortgage loan to Plaintiffs that was secured by Plaintiffs' primary residence as collateral, that the purpose of the mortgage was to satisfy a balloon payment of $42,000

owed upon the maturity of a previous loan earlier in 2017, and that based upon the terms of the loan extended by Defendant, Plaintiffs were required to make payments of at least $852.49 per month, even though their monthly income was only $915 per month. (Docket Entry No. 1, at ¶ 4). The Court granted leave to Plaintiffs to file their complaint *in forma pauperis*, pursuant to 28 U.S.C. 1915(a), and the Court ordered the parties to maintain the status quo, including postponement of the foreclosure sale of Plaintiffs' residential property, until Defendant could respond to Plaintiffs' TRO Motion. (Docket Entry Nos. 4 and 5). On May 31, 2018, the action was referred to the Magistrate Judge for entering a scheduling order for the management of the case and for disposition of pre-trial, non-dispositive motions and for a report and recommendation on all dispositive motions. (Docket Entry No. 5).

On June 25, 2018, the District Court ordered the parties to maintain the status quo, including postponement of the foreclosure sale of Plaintiffs' residential property and gave Plaintiffs seven days to file a motion to amend their complaint. (Docket Entry No. 18). On July 10, 2018, the District Court ordered Defendant to maintain the status quo and postpone the foreclosure sale pending resolution of Plaintiffs' request for an injunction. (Docket Entry No. 21).[1] On July 31, 2018, the Magistrate Judge granted Plaintiffs' motion to file an amended complaint and set a hearing for September 20, 2018. (Docket Entry No. 25). On August 7, 2018, Defendant filed a motion to dismiss, to which Plaintiffs responded on September 17, 2018. (Docket Entry Nos. 27 and 33).

At the September 20, 2018 hearing, the Magistrate Judge instructed Defendant to file with the Court a hard-copy CD containing all of the documents pertaining to Plaintiffs' account with

---

[1]As a result of the District Court's Order, Defendant has periodically filed notices of postponement of foreclosure sale. (Docket Entry Nos. 22, 30, 32, 38, 41, 44, 46, and 48).

Defendant and to send a hard-copy CD of the documents to Plaintiffs.  On September 25, 2018, Defendant filed a notice of filing and delivery of the CD.  (Docket Entry No. 35).  On September 27, 2018, the Magistrate Judge entered and Order giving Plaintiffs until October 26, 2018, to file a motion to amend their pleadings.  (Docket Entry No. 37).

In their first amended complaint (Docket Entry No. 26), Plaintiffs assert a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1639c(a)(1), and state law claims for fraud, "unconscionability," intentional infliction of emotional distress, and negligent infliction of emotional distress.  In response, Defendant filed a motion to dismiss, contending: (1) that Plaintiffs' factual allegations fail to state a claim for fraud; (2) that Plaintiffs' fraud claims are barred by the applicable statute of limitations; (3) that Defendant did not violate TILA because the September 21, 2017 modification agreement was not a new extension of credit requiring new disclosures under TILA; (4) that any claims under TILA are barred by the applicable statute of limitations; (5) that Plaintiffs are judicially estopped from asserting any claims against Defendant that accrued prior to their filing of their bankruptcy petition in 2010; (6) that the Ability-to-Repay Rule under 15 U.S.C. § 1639c(a)(1) could not apply to either the original promissory note or the subsequent 2011 note because that rule had not yet been enacted and it also does not apply to loan modifications; (7) that injunctive relief is not available under TILA; (8) that the amended complaint is devoid of any plausible factual allegations supporting a claim and/or defense of unconscionability; and (9) that Plaintiffs have failed to sufficiently allege a factual basis to establish a claim for intentional or negligent infliction of emotional distress.  Plaintiffs filed a response challenging some of the exhibits submitted by Defendant as suspicious.  (Docket Entry No. 33).

3

Pursuant to the Magistrate Judge's September 27, 2018 Order (Docket Entry No. 37), Plaintiffs filed a motion for leave to file a second amended complaint (Docket Entry No. 39) on October 29, 2018.[2]  In response (Docket Entry No. 42), Defendant contends that Plaintiffs' motion to amend should be denied because (1) it is untimely; (2) it fails to describe any reason supporting the proposed amendment and fails to describe the substance of the amendments sought as required under Local Rule 15.01(a)(1); and (3) the amendment would be futile.  Defendant also asserts the same arguments as set forth in its motion to dismiss the first amended complaint.  In their reply (Docket Entry No. 43), Plaintiffs assert that they do not remember signing the August 5, 2011 TILA disclosure form attached to Defendant's memorandum in support of its motions to dismiss.  (Docket Entry No. 28-1).

## II.  LEGAL STANDARD

Where a dispositive motion and a motion to amend the complaint are pending, a court abuses its discretion if it fails to consider and rule on a plaintiff's pending motion to amend the complaint. *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300-01 (6th Cir. 1988).  "This is not to say that the court [is] required to grant plaintiff's motion.  Rather, . . . the district court should evaluate the pending motion in light of the amendment policy embodied in the Federal Rules and should provide a reasoned explanation for its action."  *Id.* at 301.

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of

_____

[2]In his September 27, 2018 Order (Docket Entry No. 37), the Magistrate Judge gave Plaintiffs until October 26, 2018, to file a motion to amend their pleadings.  In granting Plaintiffs' previous motion to amend that was filed one day late, the Magistrate Judge warned that "when the Court sets a limit, any party acts at their peril in not strictly complying with that limit."  (Docket Entry No. 25, at 2).  Deadlines in Court Orders are not suggestions.

4

a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Because Rule 15(a)(2) directs courts to 'freely give leave when justice so requires,' the rule embodies a 'liberal amendment policy.'" *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (citation omitted). "'Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision.'" *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994) (citations omitted). "'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.'" *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citations omitted).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Jackson v. Ford Motor Co.*, 842 F.3d 902, 906 (6th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted)). A claim to relief is plausible if the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

5

and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (brackets and internal quotation marks omitted).

A court must construe the complaint "'in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted). However, courts "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (citation omitted). While *pro se* complaints are liberally construed and are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *pro se* complaints "must still contain 'enough facts to state a claim to relief that is plausible on its face.'" *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir.2004) (citations omitted) (*pro se* plaintiffs "'are not automatically entitled to take every case to trial'" and "'[l]iberal construction does not require a court to conjure allegations on a litigant's behalf.'").

"A motion under Rule 12(b)(6) is directed solely to a complaint itself . . . ." *Sims v. Mercy Hosp.*, 451 F.2d 171, 173 (6th Cir. 1971). Yet, in evaluating a plaintiff's complaint, under Fed. R. Civ. P. 10(c), any matters attached to the pleadings are considered part of the pleadings as are documents that a defendant attaches to a motion to dismiss that are referred to in the complaint and

6

"central" to the claim. *Fagan v. Luttrell*, 225 F.3d 658, No. 97-6333, 2000 WL 876775, at *2 (6th Cir. June 22, 2000) (citing *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88-89 (6th Cir. 1997)); *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) ("[A] court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment.") (quoting *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (citations omitted and citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed.R.Civ.P., the exhibit prevails.")).

### III. ANALYSIS

Plaintiffs' proposed second amended complaint is essentially a verbatim copy of their first amended complaint, with four exceptions: (1) Plaintiffs omitted quotations of various statutes and regulations cited in the first three pages of the first amended complaint, as well as some background information and statements allegedly made by a loan officer in the first paragraph of the fraud claim, (Docket Entry No. 26, at 1-4; Docket Entry No. 39-1, at 1); (2) Plaintiffs omitted reference to the reaffirmation agreement and added quoted language from Tenn. Code § 45-13-401(8) and one additional paragraph to their fraud claim, (Docket Entry No. 26, at 4-5; Docket Entry No. 39-1, at 2-3); (3) as to their claim for negligent infliction of emotional distress, Plaintiffs omitted two sentences from the first amended complaint and replaced it with one additional sentence, (Docket

7

Entry No. 26, at 8-9; Docket Entry No. 39-1, at 6); and (4) Plaintiffs added the phrase "as well as removal of any negative entry on either of plaintiff's credit report" to their prayer for relief, (Docket Entry No. 26, at 9; Docket Entry No. 39-1, at 6).

Because Defendant's response seeks the Court to deny the proposed second amended complaint on much the same basis as its motion to dismiss, the Magistrate Judge will consider Defendant's motion to dismiss and its response to Plaintiffs' motion to amend in determining the futility of Plaintiff's proposed second amended complaint in conjunction with deciding Defendant's motion to dismiss Plaintiffs' first amended complaint.[3]

## A. DOCUMENTS REFERRED TO IN COMPLAINT AND CENTRAL TO CLAIMS

On August 8, 2003, Plaintiffs executed and delivered to Defendant a promissory note in the original principal amount of $72,854.48 at 7% interest, with an annual percentage rate ("APR") of 7.094%. (Docket Entry No. 9-1, Simple Interest Fixed Rate Note/Disclosure and Security Agreement). The principal and interest were amortized over 240 payments in the amount of $565.10 a month with a final amount of $63,420.69 due on the note's maturity date on August 8, 2008. *Id.*

---

[3]Defendant asserts that Plaintiffs' motion to amend should be denied because it was untimely and did not comport with Local Rule 15.01(a)(1) in describing the reason supporting the proposed amendment and the substance of the amendments sought. Complaints filed by a *pro se* plaintiff must be liberally construed and "however inartfully pleaded," are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines*, 404 U.S. at 520. However, "[w]here, for example, a pro se litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). With that said, although Plaintiffs waited to file their motion to amend on Monday October 29, 2018, the Magistrate Judge does not believe that this three day delay caused Defendant any prejudice warranting denial on that basis. Further, given Plaintiffs' *pro se* status, the Magistrate Judge does not believe that Plaintiffs' failure to technically comply with Local Rule 15.01(a)(1) should warrant denial of their motion on that basis.

The note was secured by a deed of trust on certain real property and improvements located at 4164 Cowan Road, Cookeville, Tennessee 38506. (Docket Entry No. 9-2, Deed of Trust).

On July 12, 2006, the note was modified to extend the maturity date to July 12, 2011, with an interest rate of 7% and an APR of 7.005%. (Docket Entry No. 9-3, Modification, Extension, Change in Terms of Agreement; Docket Entry No. 15, at 15, Truth in Lending Disclosure Statement). Plaintiffs' monthly payments were in the amount of $565.14 with a final amount of $63,407.92 due on July 12, 2011. *Id*.

On April 5, 2010, Plaintiffs filed Chapter 7 bankruptcy in the Middle District of Tennessee. *In re: Mullin*, 2:10-bk-03695. On June 1, 2010, Plaintiffs, represented by an attorney, executed a Reaffirmation Agreement reaffirming Plaintiffs' debt in the amount of $66,793.98 at 7% interest, with 13 monthly payments in the amount of $565.10 with the final amount due on July 12, 2011. (Docket Entry No. 9-4).

On August 5, 2011, Plaintiffs executed a renewal agreement, in which the amount financed was $66,001.75;[4] the monthly payments, amortized over 144 payments, was $701.35; the interest rate was 7.5%; the APR was 7.665%; there was a final balloon payment of $55,418.88 due on August 5, 2014; and the note was secured by the same deed of trust. (Docket Entry No. 9-5, Multi Purpose Note and Security Agreement; Docket Entry No. 28-1, Truth-in-Lending Disclosure Statement (Final), at 3-4). On August 1, 2014, the parties entered into a consumer debt modification agreement,

---

[4]The renewal agreement lists the loan amount as $66,086.75 whereas the TILA disclosure statement lists the loan amount financed as $66,001.75. At the September 20, 2018 hearing and in their response (Docket Entry No. 33) to Defendant's motion to dismiss, Plaintiffs questioned the $85 discrepancy between these two documents. However, loan renewal documents show that the $85 amount reflected prepaid fees that were not included in the final loan amount financed, which was $66,001.75, as reflected in the final TILA disclosure. (Docket Entry No. 36, hard-copy CD, Loan Renewal Documents, at 25, 34-35).

9

effective July 30, 2014, that extended the maturity date of the debt from August 5, 2014, to August 5, 2017, with "All Other Terms and Conditions . . . remain[ing] the same." (Docket Entry No. 9-6). The agreement noted that the parties had entered into a "Prior Obligation," evidenced by a promissory note dated August 8, 2003 in the original amount of $72,854.48, with a maturity date of August 5, 2014, and that as of the date of the modification, the remaining amount due was $57,023.26 in principal plus $178.19 in accrued interest, for a total amount of $57,201.45. "Prior Obligation" was defined as Plaintiffs' "previous agreement governing [their] promise to pay [Defendant] money, including any loan agreement, note, or document that evidences [Plaintiffs'] indebtedness, and any extensions, renewals, modifications, and substitutions." *Id.* The modification agreement provided that "[e]xcept as specifically amended in the Modification, all terms of the Prior Obligation remain in effect." *Id.*

On August 5, 2017, the maturity date was extended to October 5, 2017, with payments to continue on the same monthly basis as described in the original agreement and "All Other Terms and Conditions . . . remain[ing] the same." (Docket Entry No. 9-7). The modification agreement noted Plaintiffs' August 8, 2003 promissory note with a maturity date of August 5, 2017, and that as of the date of the modification, the remaining amount due was $42,467.02 in principal plus $867.03 in accrued interest, for a total amount of $43,334.05. *Id.* All terms of the Prior Obligation were to remain in effect. *Id.* On September 21, 2017, the parties entered into another modification agreement, which extended the maturity date to October 5, 2020, with payments to continue on the same monthly basis as described in the original agreement and "All Other Terms and Conditions . . . remain[ing] the same." (Docket Entry No. 9-8). The modification agreement noted Plaintiffs' August 8, 2003 promissory note with a maturity date of October 5, 2017, and that as of the date of

10

the modification, the remaining amount due was $42,467.02 in principal plus $439.95 in accrued interest, for a total amount of $42,906.97. *Id.* Once again, the modification agreement referenced "Prior Obligation" as including "any extensions, renewals, modifications, and substitutions." *Id.*

## B. TILA CLAIM

Plaintiffs' "TILA Violation" claim in their proposed second amended complaint is a verbatim copy of their claim in their first amended complaint. As to this claim, citing 12 C.F.R. § 226.20, Plaintiffs allege the following:

> Since the most recent document signed between the defendant and the plaintiffs claims that all terms of the mortgage remain the same as the original loan originated August 8th, 2003 and considering the APR on that contract is somewhere between 7% and 7.1% and the payment on that contract is $565.10, whereas the actual interest rate being charged by the defendant after September 21st, 2017 is 7.5% and the actual payment is 701.35. This, by the rule above, makes the changes to our mortgage by the defendant **not** exempt from the classification of a refinance, and therefore subject to TILA compliance, including the requirement for a new TILA disclosure, which was not provided, and requiring compliance with the ability to repay rule in 15 U.S. Code § 1639c(a), and preserving a private right of action for civil liability by the plaintiffs for this violation.

(Docket Entry Nos. 26, at 6; Docket Entry No. 39-1, at 4).

The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). "[T]he Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).

11

Plaintiffs appear to assert that the September 21, 2017 modification agreement was a "refinance" that required TILA disclosures. Specifically, Plaintiffs allege that Defendant violated TILA because "the actual interest rate being charged by the defendant after September 21st, 2017 [was] 7.5% and the actual payment [was] [$]701.35," and that this change to their mortgage, which was "not exempt[ed] from the classification of a refinance" under 12 C.F.R. § 226.20(a), required "TILA compliance, including the requirement for a new TILA disclosure" that Defendant failed to provide. (Docket Entry Nos. 26, at 6; Docket Entry No. 39-1, at 4).

Title 12 C.F.R. § 226.20(a) states:

(a) Refinancings. A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation. The following shall not be treated as a refinancing:

> (1) A renewal of a single payment obligation with no change in the original terms.

> (2) A reduction in the annual percentage rate with a corresponding change in the payment schedule.

> (3) An agreement involving a court proceeding.

> (4) A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance of the types described in § 226.4(d).

> (5) The renewal of optional insurance purchased by the consumer and added to an existing transaction, if disclosures relating to the initial purchase were provided as required by this subpart.

*Id.*

The Official Staff Interpretation to this regulation provides, in part, as follows:

12

1. Definition. A refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation, based on the parties' contract and applicable law. The refinancing may involve the consolidation of several existing obligations, disbursement of new money to the consumer or on the consumer's behalf, or the rescheduling of payments under an existing obligation. In any form, the new obligation must completely replace the prior one.

· Changes in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation.

· A substitution of agreements that meets the refinancing definition will require new disclosures, even if the substitution does not substantially alter the prior credit terms.

2. Exceptions. A transaction is subject to § 226.20(a) only if it meets the general definition of a refinancing. Section 226.20(a)(1) through (5) lists 5 events that are not treated as refinancings, even if they are accomplished by cancellation of the old obligation and substitution of a new one.

12 C.F.R. § Pt. 226, Supp. I. Thus, in determining whether a transaction is a refinancing, one first applies "'the definition of refinancing in § 226.20(a) of Regulation Z and the Official Staff Interpretations to the transaction at issue,'" and if that results in the transaction being deemed a refinancing, then "'one of the five exceptions may be applicable to except the transaction from the disclosures required of a refinancing. However, if the transaction is found not to be a refinancing when applying the general definition, the exceptions are not implicated.'" *Sultan v. M&T Bank*, No. 16-CV-08767, 2017 WL 1304103, at *2 (N.D. Ill. Apr. 7, 2017) (quoting *In re Sheppard*, 299 B.R. 753, 762 (Bankr. E.D. Pa. 2003)).

Here, the interest rate of 7.5% and monthly payment of $701.35 were set by the August 5, 2011 renewal note, for which Defendant did, in fact, provide preliminary and final TILA disclosures to which Plaintiffs signed. (Docket Entry No. 28-1, at 1-4). Thus, the monthly payments in effect at the time of the September 21, 2017 modification were set by the August 5, 2011 renewal note, and

13

the monthly payment amounts had not changed since August 5, 2011. To prevail on a claim for damages for TILA violations, a plaintiff must file suit "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Therefore, any TILA claim for damages based upon the August 5, 2011 renewal or the July 30, 2014 modification agreement is barred by the statute of limitations. Likewise, any claim for rescission based on any transaction predating the August 5, 2017 and September 21, 2017 modification agreements is barred by the applicable three-year statute of limitations. 15 U.S.C. § 1635(f).

As to any claim regarding the August 5, 2017 and September 21, 2017 modification agreements, neither of these transactions constitute a refinancing, as there was not a new obligation that completely replaced the prior one. "The rule stated by the Commentary is that only 'the cancellation of [the original] obligation and the substitution of a new obligation' amount to a refinancing." *Jackson v. Am. Loan Co.*, 202 F.3d 911, 913 (7th Cir. 2000) (citing *Begala v. PNC Bank, Ohio, N.A.*, 163 F.3d 948 (6th Cir.1998)); *In re Sheppard*, 299 B.R. at 763 (collecting cases). "Moreover, TILA does not impose new disclosure obligations upon those parties who execute a forbearance agreement where it does not completely replace the original mortgage." *Gordon v. Home Loan Ctr.*, LLC, No. 10-10508, 2011 WL 1261179, at *5 (E.D. Mich. Mar. 31, 2011) (citing *Norton-Griffiths v. Wells Fargo Home Mortg.*, No. 5:10-cv-169, 2011 WL 61609 (D. Vt. Jan.4, 2011) citing *Castrillo v. Am. Home Mortg. Serv., Inc.*, 670 F. Supp.2d 516, 528 (E.D. La. 2009) ("'[W]here a loan modification agreement does not 'completely replace' an earlier mortgage, but rather 'amends and supplements' it, the document does 'not give rise to disclosure requirements or rescission rights under TILA.'") (internal quotation marks omitted)). Here, both modification agreements only extended the maturity dates of Plaintiffs' prior loan obligations, with payments to continue on the same monthly

14

basis as described in the original agreement, and "All Other Terms and Conditions . . . remain[ing] the same." (Docket Entry Nos. 9-7 and 9-8). The modification agreements referenced "Prior Obligation" as including "any extensions, renewals, modifications, and substitutions." *Id*.

Moreover, to the extent that Plaintiffs assert a TILA claim that Defendant made a loan to Plaintiffs that it knew Plaintiffs could not afford, in violation of 15 U.S.C. § 1639c(a)(1), this claim also fails. Section 1639c(a)(1), the Ability to Repay provision ("ATR"), provides that "no creditor may make a residential mortgage loan unless the creditor makes a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan, according to its terms[.]" Regulation Z Section 1026.43, implementing the ATR, provides that in making the repayment ability determination, creditors must consider the consumer's current or reasonably expected income or assets; the consumer's current employment status if the creditor relies on the consumer's employment income in determining repayment ability; the consumer's monthly payment on the covered transaction; the consumer's monthly payment on any simultaneous loan that the creditor knows or has reason to know will be made; the consumer's monthly payment for mortgage-related obligations; the consumer's current debt obligations, alimony, and child support; the consumer's monthly debt-to-income ratio or residual income; and the consumer's credit history. 12 C.F.R. § 1026.43(c)(2)(i)-(viii). The creditor must verify this information by using reasonably reliable third-party records. 12 C.F.R. § 1026.43(c)(3). The ATR requirement does not apply to home equity lines of credit subject to 12 C.F.R. § 1026.40; timeshare plans; reverse mortgages; and temporary or "bridge" loans with terms of 12 months or less. 12 C.F.R. § 1026.43(a).

Here, the ATR rule did not become effective until January 10, 2014. 78 Fed. Reg. 6408-01, 2013 WL 327442, at *6408. Therefore, the ATR could not apply to either the original 2003 promissory note or the 2011 renewal note. Further, the ATR does not apply to a loan modification unless it is considered a refinancing under Regulation Z. As already stated, the August 5, 2017 and September 21, 2017 modification agreements, which are within TILA's one-year statute of limitations, do not constitute a refinancing.

Accordingly, for these reasons, the Magistrate Judge concludes that these claims fail and any amendment to them would be futile.

## C. FRAUD CLAIM

Plaintiffs' "Fraud" claim in their proposed second amended complaint is essentially a verbatim copy of their claim in their first amended complaint. In their first amended complaint, Plaintiffs reference the June 1, 2010 reaffirmation agreement, but do not clearly allege any fraudulent conduct in relation to that document. (Docket Entry No. 26, at 4). That document sets forth the payment amount, interest rate, and number of payments (13 monthly payments, followed by payment of balance of loan) and was signed by their bankruptcy attorney. (Docket Entry No. 9-4). Further, any TILA claim for damages stemming from this agreement would be barred by the one-year statute of limitations, 15 U.S.C. § 1640(e), and any TILA claim for rescission would be barred by the three-year statute of limitations, 15 U.S.C. § 1635(f).

Next, Plaintiffs allege in the first amended complaint and the proposed second amended complaint that they "were assured by the originating loan officer that the amortization scale would run continuously, and not be reset to the beginning when the maturity dates were extended." (Docket Entry No. 26, at 4; Docket Entry No. 39-1, at 1). Plaintiffs allege that the August 5, 2011 renewal

16

agreement changed the interest rate to 7.5%, the amortization scale to 144 months, and the payment to $701.35, and that these changes were "significant enough that this transaction only meets the statutory definition of a refinance, yet no TILA disclosure was provided, making the defendant negligent in their statutory duty," which "also runs afoul of how the original loan was explained . . . in 2003." (Docket Entry No. 26, at 4; Docket Entry No. 39-1, at 1). As stated previously, Defendant did provide TILA disclosures regarding this transaction that Plaintiffs signed, (Docket Entry No. 28-1), and in any event, any TILA claim based upon the 2011 renewal agreement is barred by the applicable statute of limitations. 15 U.S.C. § 1640(e) and 15 U.S.C. § 1635(f).[5]

---

[5]Plaintiffs make vague references to conversations with Defendant's loan officers, including that they were given assurances by Defendant's originating loan officer regarding the amortization schedule, which Defendant later changed. This allegation sounds in breach of contract. Tennessee Code Ann. § 29-2-101(b)(1) provides:

> No action shall be brought against a lender or creditor upon any promise or commitment to lend money or to extend credit, or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor.

*Id*. However, no such assurances were ever put into writing and signed by Defendant lender. Thus, such a claim fails. *Williams v. SunTrust Mortg., Inc*., No. 3:12-CV-477, 2013 WL 1209623, at *2-3 (E.D. Tenn. Mar. 25, 2013); *Grona v. CitiMortgage, Inc.*, No. 3-12-0039, 2012 WL 1108117 (M.D. Tenn. Apr. 2, 2012).

Further, "[a]s a general rule, parol evidence is not admissible to contradict, vary or alter a written contract. The rule that a written contract must prevail over the previous or contemporaneous contradictory representations is not merely a rule of evidence, but one of substantive law." *Geisser v. NVR, Inc.*, No. 3:01-0132, 2001 WL 36016177, at *3 (M.D. Tenn. May 15, 2001) (citing *Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888, 892 (Tenn. Ct. App. 2000)). Plaintiffs allege oral evidence contradicting the express terms of several transactions. Accordingly, the parol evidence rule also bars references to these alleged conversations.

17

Plaintiffs next allege that the July 30, 2014 modification agreement "expressly stated that all other terms and conditions would remain the same as the loan originated 8/8/03" and that the "TILA Disclosure on that document stated a 7.094% APR, a payment of $565.10, and an amortization schedule of 240 months," and thus, "the document contains falsity," because "the payment subsequent to this document was [$]701.35." (Docket Entry No. 26, at 4-5; Docket Entry No. 39-1, at 1-2). As stated previously, any TILA claim based upon the July 30, 2014 modification agreement is barred by the applicable statutes of limitations. 15 U.S.C. § 1640(e) and 15 U.S.C. § 1635(f).

Plaintiffs also allege that the September 21, 2017 modification agreement likewise "contains falsity" because payments made subsequent to this document were $701.35 instead of $565.10 as provided in the original August 8, 2003 promissory note. (Docket Entry No. 26, at 5; Docket Entry No. 39-1, at 2). The record reflects that the August 8, 2003 promissory note originally set the monthly payments at $565.10 with an interest rate of 7% and a maturity date of August 8, 2008. However, Plaintiffs ignore that this obligation was modified by the August 5, 2011 renewal, which modified the maturity date to August 5, 2014 and set the monthly payment amount to $701.35 with an interest rate of 7.5%. Defendant provided TILA disclosures regarding this transaction. The July 30, 2014 modification agreement extended the maturity date to August 5, 2017, stating that "[a]ll Other Terms and Conditions will remain the same." (Docket Entry No. 9-6). The agreement referred to the "Prior Obligation," evidenced by a promissory note dated August 8, 2003 with a maturity date of August 5, 2014. "Prior Obligation" was defined as Plaintiffs' "previous agreement governing [their] promise to pay [Defendant] money, including any loan agreement, note, or document that evidences [Plaintiffs'] indebtedness, and any extensions, renewals, modifications, and substitutions." *Id.* The modification agreement provided that "[e]xcept as specifically amended in the Modification,

18

all terms of the Prior Obligation remain in effect." *Id.* The subsequent August 5, 2017 and September 21, 2017 modification agreements extended the maturity dates of the loan and likewise contained the same language that all of the terms and conditions would remain the same; that all of the terms of the Prior Obligation, evidenced by the August 8, 2003 promissory note, would remain in effect; and that "Prior Obligation" referred to "any extensions, renewals, modifications, and substitutions." (Docket Entry No. 9-7; Docket Entry No. 9-8). Based upon a reading of these documents' provisions, Plaintiffs have failed to allege a plausible federal claim.[6]

_____

[6]For diversity purposes, a corporation is deemed to be a citizen of the state where it has been incorporated and of the state where it has its principal place of business. *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 544 (6th Cir. 1994); 28 U.S.C. § 1332(c)(1). "Courts may take judicial notice of public records of corporate filings maintained online by state Secretaries of State to determine a company's place of incorporation." *Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 23 n.1 (D.D.C. 2018); *see also Overall v. Ascension,* 23 F. Supp. 3d 816, 825 (E.D. Mich. 2014) (taking judicial notice of articles of incorporation of corporations, which are public documents filed with Secretaries of State and available on the states' websites); *Ebersohl v. Bechtel Corp.*, No. 09-1029-GPM, 2010 WL 2164451, *2 (S.D. Ill. May 31, 2010) (taking judicial notice of the records of corporations maintained by Illinois Secretary of State to determine state of incorporation); Fed. R. Evid. 201(b). Here, Defendant SouthEast Bank is incorporated and has its principal place of business in Tennessee and is therefore a non-diverse party. https://tnbear.tn.gov/Ecommerce/FilingDetail.aspx?CN=0011172521800552282430210630462130 44015146015117 (last accessed January 30, 2019). Nor do Plaintiffs plead that federal diversity jurisdiction exists under 28 U.S.C. § 1332.

As Plaintiffs do not have any viable federal claims, the Court "may decline to exercise supplemental jurisdiction over" state law claims if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Dismissal is not mandatory, however, because supplemental jurisdiction 'is a doctrine of discretion, not of plaintiff's right.'" *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) (citations and internal quotation marks omitted);*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims."). Thus, "Section 1367 grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims that are 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting 28 U.S.C. § 1367(a)); *Carmichael v. City of Cleveland*, 571 F. App'x 426, 434 (6th Cir. 2014) (citation omitted) ("district courts have 'broad discretion in deciding whether to exercise

19

Plaintiffs' claim for fraud under Tennessee law also fails. In Tennessee, the elements for a claim for fraud are:

> (1) intentional misrepresentation of a material fact; (2) knowledge that the representation was false--that the misrepresentation was made knowingly or recklessly or without belief or regard for its truth; (3) reasonable reliance on the misrepresentation by the plaintiff and resulting damages; (4) "that the misrepresentation relates to an existing or past fact[.]" If the claim is one for promissory fraud, "then the misrepresentation must 'embody a promise of future action without the present intention to carry out the promise [.]'"

*Dog House Investments, LLC v. Teal Properties, Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) (citations omitted).

First, any fraud claim based upon the August 5, 2011 renewal agreement or the July 30, 2014 modification agreement or any agreements preceding these transactions would be barred by the applicable statute of limitations, as Plaintiffs failed to file their fraud claim "within three years of 'when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered.'" *Haynes v. Bass*, No. W201501192COAR3CV, 2016 WL 3351365, at *6 (Tenn. Ct. App. June 9, 2016) (citations and internal quotation marks omitted); *Fortune v. Unum Life Ins. Co. of Am.*, 360 S.W.3d 390, 401 (Tenn. Ct. App. 2010); *Findley v. Hubbard*, No.

---

supplemental jurisdiction over state law claims.'"). "This requirement is met when state and federal law claims arise from the same contract, dispute, or transaction." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 583 (6th Cir. 2011). To determine whether to retain jurisdiction over state law claims, courts "should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel*, 625 F.3d at 951-52 (citation omitted). Here, given that these claims are linked in that they all arise out of the same core disputes and transactions, that Plaintiffs' state law claims lack merit and that Defendant has refrained from foreclosing on Plaintiffs' residential property for over eight months, the Magistrate Judge believes that the interests of judicial economy, fairness and avoiding multiple lawsuits support exercising supplemental jurisdiction to dispose of these claims in a single proceeding, even in the absence of the federal claims that gave rise to the Court's original jurisdiction over this action.

M201701850COAR3CV, 2018 WL 3217717, at *8 (Tenn. Ct. App. July 2, 2018), *appeal denied* (Oct. 10, 2018); Tenn. Code. Ann. § 28-3-105. Based upon Plaintiffs' factual allegations in their first amended complaint and the documents related to Plaintiffs' claims, Plaintiffs were clearly aware of the terms to these documents to which they signed and thus, any fraud claim based upon these transactions are time barred.

As to any fraud claim regarding the August 5, 2017 and September 21, 2017 modification agreements, Plaintiffs allege that the September 21, 2017 modification agreement "contains falsity." (Docket Entry No. 26, at 5; Docket Entry No. 39-1, at 2). Rule 9(b) of the Federal Rules of Civil procedure states that "a party must state with particularity the circumstances constituting fraud[.]" "Rule 9(b) 'requires a plaintiff (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent.'" *Ross v. PennyMac Loan Servs. LLC*, No. 18-3487, 2019 WL 211390, at *2 (6th Cir. Jan. 16, 2019) (citations omitted). A court "need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). Also, "[c]onclusory statements of reliance are not sufficient to explain with particularity how [a plaintiff] detrimentally relied on the alleged fraud." *Evans v. Pearson Enters.*, 434 F.3d 839, 852-53 (6th Cir. 2006).

Plaintiffs' threadbare allegations fail to meet the pleading requirements under Rule 9(b). Plaintiffs incorrectly allege that the September 21, 2017 modification agreement "extend[ed] the maturity date to October 5, 2020, with all other terms remaining the same as the original mortgage dated August 8, 2003." (Docket Entry No. 26, at 5; Docket Entry No. 39-1, at 2). As stated previously, Plaintiffs ignore that the August 5, 2011 renewal set the monthly payment amount to

21

$701.35, with an interest rate of 7.5%, and that all subsequent modification agreements contained the same language that all of the terms and conditions would remain the same; that all of the terms of the Prior Obligation, evidenced by the August 8, 2003 promissory note, would remain in effect; and that "Prior Obligation" referred to "any extensions, renewals, modifications, and substitutions." (Docket Entry Nos. 9-6, 9-7 and 9-8). Further, Plaintiffs fail to allege how they *relied* on any purported misrepresentation or any resulting damage, considering that Plaintiffs have benefitted from having the maturity dates extended.

In their proposed second amended complaint, Plaintiffs also include the following paragraph:

The originating loan officer did state that plaintiffs' home would be paid off in 20 years at the payment entered into at mortgage origination. The defendant did in fact re-amortize the plaintiffs' mortgage, increasing the amount of the payments, and also increasing exponentially the amount of said payments applied as interest late in the life of the loan without disclosing this to plaintiffs, giving themselves a significant financial leverage over the plaintiffs and their home. Defendant was fully aware at the time that this would make it all but impossible for the plaintiffs to meet their mortgage obligations to the defendant and even if by some miracle plaintiffs could meet the obligation, they would do so to substantial unearned profit by the defendant. Plaintiffs will produce significant evidence of fraud by the defendant and will prove said fraud extended well into the year 2017, placing the fraudulent activity of the defendant well within the statute of limitations for this action.

(Docket Entry No. 39-1, at 3).

The inclusion of this paragraph does not state a viable claim for the previous stated reasons. Plaintiffs' proposed second amended complaint does not remedy the defects found in the first amended complaint. Accordingly, these claims should be dismissed.

### D. UNCONSCIONABILITY CLAIM

Plaintiffs' "Unconscionability" claim in their proposed second amended complaint is a verbatim copy of their claim in their first amended complaint. Plaintiffs allege, in part, that "the

defendant re-amortizing from the beginning at every opportunity without disclosing this to the plaintiffs and the constant flux in terms that should not have changed," and that "[t]he original document is fraught with errors, and the ensuing 'help' from the defendant was unfair and underhanded and has put the plaintiffs at a very substantial disadvantage to the defendant." (Docket Entry No. 26, at 7; Docket Entry No. 39-1, at 4-5). "[T]he doctrine of unconscionability is not available to obtain affirmative relief, but is available only as a defense." *Wallace v. Nat'l Commerce Bancorporation*, No. 02A01-9205-CV-00143, 1993 WL 44600, at *3 (Tenn. Ct. App. Feb. 23, 1993); *Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2010 WL 11493119, at *5 (W.D. Tenn. May 18, 2010) ("Tennessee law does not recognize unconscionability as an actionable claim.") (citing *Wallace*, 1993 WL 44600, at *3). Further, Plaintiffs fail to sufficiently plead factual allegations supporting such a claim that is plausible on its face. Accordingly, the Magistrate Judge concludes that this claim fails and any amendment would be futile.

### E. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Plaintiffs' claim for intentional infliction of emotional distress in their proposed second amended complaint is a verbatim copy of their claim in their first amended complaint. Plaintiffs allege, in relevant part, that:

> The defendant knew full well that both plaintiffs suffered from debilitating pain and substantial disability in 2014, as evidenced specifically by the plaintiffs' receipt of mortgage aid by THDA. Defendant was just as aware of this in September of 2017 when they saddled us with a payment they knew we had no way to repay. Plaintiffs honestly believed no one would refinance us due to our credit history related to our disability and Bankruptcy, and the defendant did nothing to allay this belief nor did they offer us an alternate mortgage product or suggest we may be able to refinance elsewhere. They could have refinanced us with affordable terms but refused. . . . The defendant was aware that this land was an inheritance from Mrs. Mullin's father, was aware of how hard we worked not to lose our home after becoming disabled in 2012, and knew their actions in September 2017 would ultimately lead to foreclosure if my disability claim was denied. . . . Gambling with my home based on benefits I might

23

> receive, as well as misrepresenting or omitting changes to our mortgage to their great
> advantage is reckless, and the way they managed my mortgage from the very
> beginning should not be tolerated by any civilized society.

(Docket Entry No. 26, at 7-8; Docket Entry No. 39-1, at 5-6).

To establish "a claim for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by a civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff." *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (citation omitted). "To establish a claim for outrageous conduct the actionable conduct should be set out in the complaint. One must allege more than mere legal conclusion and describe the substance and severity of the conduct that is allegedly outrageous." *Braswell v. Carothers*, 863 S.W.2d 722, 727 (Tenn. Ct. App. 1993) (citing *Medlin v. Allied Investment Co.*, 217 Tenn. 469, 398 S.W.2d 270, 275 (1966)); *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 893 (Tenn. Ct. App. 2000).

"A plaintiff seeking damages for intentional infliction of emotional distress must meet an 'exacting standard.' 'Recovery for intentional infliction of emotional distress is limited to mental injury which is so severe that no reasonable person would be expected to endure it.'" *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (citations omitted). The conduct must be "'so outrageous in character, and so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997) (citations omitted). That is, such conduct is actionable where "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* "It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit

24

recovery. Thus, the trial court may reasonably dismiss this legal theory as a matter of law." *Lane*, 334 S.W.3d at 763 (citation omitted).

Here, the monthly payments in effect at the time of the September 21, 2017 modification agreement were set by the August 5, 2011 renewal note, and had not changed since August 5, 2011. The September 21, 2017 modification agreement only extended the maturity date of Plaintiffs' prior loan. The allegations in the amended complaint do not rise to the level of "conduct that is so outrageous that it is not tolerated by a civilized society." Accordingly, the Magistrate Judge concludes that this claim fails and any amendment would be futile.

### F. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM

Plaintiffs' claim for negligent infliction of emotional distress in their proposed second amended complaint virtually copies the same allegations regarding this identical claim in their first amended complaint. Both complaints allege that Defendant had "a legal duty to use reasonable care with regard to the plaintiff," and that Defendant "time after time" neglected this duty. (Docket Entry No. 26, at 8; Docket Entry No. 39-1, at 6). Additionally, Plaintiffs allege that as result of Defendant's conduct Mrs. Mullin's mother yelled at Plaintiffs for being irresponsible and has since not spoken to them. *Id*. Plaintiffs allege in the first amended complaint that their daughter accused Plaintiffs of blaming others for their problems and as a consequence have not seen her or their grandchildren. (Docket Entry No. 26, at 8-9). In the proposed second amended complaint, Plaintiffs omit the sentences referencing their daughter and not seeing their grandchildren, but instead allege that "[t]he actions of the defendant in their pursuit of profit has led to significant damage to plaintiffs' relationships with friends and family, as well as destroying all credibility we may have with any other provider of consumer credit." (Docket Entry No. 39-1, at 6).

25

In Tennessee, a claim for negligent infliction of emotional distress "requires that the plaintiff establish the elements of a general negligence claim: (1) duty, (2) breach of duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation." *Lourcey*, 146 S.W.3d at 52. Additionally, "the plaintiff must establish the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence." *Id.* "Tennessee common law generally does not impose fiduciary or similar duties on banks with respect to their customers, depositors, or borrowers absent special circumstances." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006). The record reflects that Plaintiffs executed a promissory note in August 2003 that was secured by Plaintiffs' residential property; that the August 5, 2011 renewal note modified Plaintiffs' monthly payments and interest rate and extended the maturity date of the loan; and that the monthly payments in effect at the time of the September 21, 2017 modification agreement had not changed since August 5, 2011. Other than the contractual duty created by the note and the deed of trust, Plaintiffs fail to allege what Defendant's alleged duty was or how Defendant allegedly violated this duty. Plaintiffs fail to sufficiently plead factual allegations supporting a claim for negligent infliction of emotional distress that is plausible on its face. *Williams v. SunTrust Mortg., Inc.*, No. 3:12-CV-477, 2013 WL 1209623, at *4 (E.D. Tenn. Mar. 25, 2013) ("To the extent plaintiffs allege that defendants breached the Note and Deed of Trust, or any subsequent modification agreement, any remedy for the breach would be based upon contract law rather than tort law."); *Jestes v. Saxon Mortg. Servs., Inc.*, No. 2:11-00059, 2014 WL 1847806, at *10 (M.D. Tenn. May 8, 2014) ("Tennessee courts routinely hold that alleged negligence in the handling of a loan modification does not does not state a viable cause of action."). Accordingly, the Magistrate Judge concludes that this

26

claim fails and any amendment would be futile, as the proposed second amended complaint does not remedy the defects found in the first amended complaint.

Lastly, as Plaintiffs do not have any viable claims, Plaintiffs' motion for preliminary injunction should therefore be denied as moot.

## IV. RECOMMENDATION

Accordingly, for these reasons, the Magistrate Judge **RECOMMENDS** that Plaintiffs' motion for leave to file second amended complaint (Docket Entry No. 39) be **DENIED**; that Defendant's motion to dismiss (Docket Entry No. 27) be **GRANTED;** that Plaintiffs' motion for preliminary injunction (Docket Entry No. 45) be **DENIED as moot**; and that this action be **DISMISSED WITH PREJUDICE.**

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 4th day of February, 2019.

/s/    Joe B. Brown
JOE B. BROWN
United States Magistrate Judge