# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COOKEVILLE DIVISION

| | |
|---|---|
| JAMES MULLIN AND SHANNON MULLIN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) NO. 2:18-cv-00046 ) CHIEF JUDGE CRENSHAW |
| SOUTHEAST BANK, | ) ) ) |
| Defendant. | ) |

## ORDER

This case arises from Southeast Bank's attempt to hold a foreclosure sale of *pro se* Plaintiffs James and Shannon Mullin's property. Pending before the Court is a Report and Recommendation (Doc. No. 49) from the Magistrate Judge concluding that the Court should grant Southeast Bank's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 27), deny Plaintiff's Motion for Injunctive Relief (Doc. No. 45), and deny Plaintiffs' Motion to Amend (Doc. No. 39). In response, Plaintiffs have filed a Motion for Extension of Time to File Response (Doc. No. 50) and a Motion to Compel (Doc. No. 53), which are each opposed by Southeast Bank (Doc. Nos. 51; 55.)

On May 31, 2018, Plaintiffs filed this action asserting numerous claims and seeking temporary injunctive relief against Southeast Bank. (Doc. No. 1.) Given that Plaintiffs' residence was at issue, the Court ordered the parties to maintain the status quo – including postponement of the foreclosure sale – so that the Magistrate Judge could fully consider the substantive claims raised by Plaintiffs. On July 31, 2018, the Magistrate Judge allowed Plaintiffs to file an Amended Complaint ("Complaint"). (Doc. No. 26.) In the Complaint, Plaintiffs assert a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1639c(a)(1), and various state law claims for fraud,

"unconscionability," intentional infliction of emotional distress, and negligent infliction of emotional distress. On August 7, 2018, Southeast Bank filed a Motion to Dismiss. (Doc. No. 27.) On September 20, 2018, the Magistrate Judge held a hearing. As part of his consideration of the issues, the Magistrate Judge instructed Southeast Bank to provide to Plaintiffs and the Court all documents pertaining to Plaintiffs' account. Southeast Bank filed a notice of compliance several days later. (Doc. Nos. 35, 36.) On October 29, 2018, with leave of the Magistrate Judge, Plaintiffs filed a Motion to Amend the Complaint (i.e., to file a second amended complaint). (Doc. No. 37.) The proposed second amended complaint contained only minor changes to the Complaint and was, for all substantive intents and purposes, "a verbatim copy" thereof (Doc. No. 49 at 7-8).[1] On December 27, 2018, Plaintiffs filed a Motion for Preliminary Injunction. (Doc. No. 45.)

Soon thereafter, the Magistrate Judge issued his Report and Recommendation. Between the filing of this action and the issuance of the Report and Recommendation, Southeast Bank postponed the foreclosure sale eight different times at the insistence of the Court to allow for a full airing of Plaintiffs' claims. (See Doc. Nos. 22; 30; 32; 38; 41; 44; 46; 48.) The Report and Recommendation is a thorough analysis of this matter. The Magistrate Judge properly considered certain documents, produced by Southeast Bank, that were properly part of Plaintiffs' file because they were integral to Plaintiffs' claims. These included Plaintiffs': 2003 Promissory Note; Deed of Trust; 2011 Load Modification; 2010 Bankruptcy; 2010 Reaffirmation Agreement; 2011 Renewal Agreement; August 2014 Modification Agreement; August 2017 Modification Agreement; and September 2017 Modification Agreement. (See Doc. No. 49 at 8-11.) In the

---

[1] Southeast Bank's response to the Motion to Amend was on much the same basis as its Motion to Dismiss. Accordingly, the Magistrate Judge considered Southeast Bank's Motion to Dismiss and its response to Plaintiffs' Motion to Amend together.

2

Report and Recommendation, the Magistrate Judge foremost concluded that Plaintiffs' do not have a viable Truth in Lending Act ("TILA") claim. (Id. at 11-16.)

Fourteen days after issuance of the Report and Recommendation, Plaintiffs filed a "Motion for Deadline Extension." (Doc. No. 50.) Plaintiff represented that Legal Aid had declined to assist them and that they needed more time to respond. (Id.) Plaintiff also included several pages of rhetoric against Southeast Bank. (Id.) Southeast Bank opposed the motion, arguing that Plaintiffs had flaunted deadlines multiple times in this case, and that there were no unresolved issues to be considered. (Id.) Southeast Bank also represented to the Court that Plaintiffs had made no mortgage payments, tax payments, nor insurance payments since the outset of this litigation. (Id.)

One week later, Plaintiffs filed a "Motion to Compel Disclosure." (Doc. No. 53.) For the first time since the Court's hearing on September 20, 2018, Plaintiffs contended that Southeast Bank had not provided the complete record. (Id.) Plaintiffs stated that the record "stops in 2014." (Id.) Plaintiffs state that "without the record to document the total amount collected . . . it is absolutely impossible to gauge the depth or existence of fraud in this matter." As relief, Plaintiffs seek more discovery and the ability to file another amended complaint. (Id.) Southeast Bank objects to the Motion to Compel because it was clearly filed outside of the 14-day response period to the Report and Recommendation. (Doc. No. 55.) Beyond that, Southeast Bank states that (1) there is no pending discovery request by the Plaintiffs with which the Bank has failed to comply; and (2) regardless, the CD, provided to both the Court and Plaintiff prior to the September hearing, "includes copies of the original 2003 loan documents, the 2006 loan modification, the 2011 loan renewal documents, the 2014 loan modification, the 2017 loan modification, the documents from the Plaintiffs' 2010 bankruptcy, the escrow analysis history, and the transactional history." (Id.)

As an initial matter, Plaintiffs' Motion to Compel is without merit. Southeast Bank has repeatedly certified to the Court that it produced Plaintiffs' entire file. But, more importantly, there is plain evidence of the fact that Southeast Bank did exactly that: the Court has the CD exhibit and the Magistrate Judge utilized the produced file in preparing the Report and Recommendation.[2] If Plaintiffs concerns were legitimate, the deficiencies in Southeast Bank's production would have been readily apparent; Plaintiffs could and should have raise any such deficiency with the Court in a timely fashion. Instead, Plaintiffs have filed their nebulous motion five months after Southeast Bank's production and the Magistrate Judge's hearing, and three weeks after the adverse Report and Recommendation. The motion is both unfounded and clearly untimely.

The Motion for Deadline Extension is similarly unpersuasive. Plaintiffs have been actively litigating this matter for eight months. The sudden contention that they were unable to timely file any objections without the assistance of counsel is unconvincing.[3] If Plaintiffs wanted assistance from counsel, they have had a long time to seek it. For Plaintiffs to seek to delay a response to and ruling on the Report and Recommendation, when faced with a clearly adverse result, is neither convincing nor fair to Southeast Bank. Furthermore, anti-Southeast Bank rhetoric aside, Plaintiffs have offered no substantive indication as to the basis for any objection (counsel-assisted or otherwise) to the Report and Recommendation that might suggest a reason to the Court to continue to delay resolution of this case.

---

[2] To the extent that Plaintiffs may specifically assert that certain supporting documents to the 2003 Promissory Note are missing from the file, they have not established how those documents are relevant to their federal claim, and, as discussed below, such documents are indeed not necessary to rule on that claim.

[3] Plaintiffs also reference their disabilities, yet these too have not prevented them from making lengthy substantive filings in this case to date.

Out of an abundance of caution, however, the Court has assumed that Plaintiffs specifically object to the Magistrate Judge's conclusions regarding their purported TILA claims. The Court has, therefore, engaged in a *de novo* review. Upon so doing, the Court concurs with the Magistrate Judge's conclusions. The Court agrees that Plaintiffs' primary TILA claim is based upon the assertion that the September 21, 2017 modification agreement was a "refinance" that required TILA disclosures that Southeast Bank failed to provide. However, this is not borne out by the record – namely, the interest rate and payment amount in effect in September 2017 of which Plaintiffs complain were set by the 2011 Renewal Agreement, for which Southeast Bank did, in fact, provide TILA disclosures. Any of Plaintiffs' TILA claims based on the 2011 Renewal Agreement are barred by multiple TILA statutes of limitations. 15 U.S.C. § 1640(e) (one-year limit for damages); 15 U.S.C. § 1635(f) (three-year limit for rescission).

Furthermore, the August and September 2017 Modification Agreements did not trigger new TILA obligations. As the Magistrate Judge correctly explained, those Agreements only extended the maturity dates of Plaintiffs' prior loan obligations, with payments to continue on the same monthly basis as described in the original agreement and all other "Terms and Conditions" remaining the same. (Doc. Nos. 9-7; 9-8.) Under governing authority, they did not constitute a "refinancing" that could form the subject of a viable TILA claim because they were not a new obligation that completely replaced the existing obligation. See Regulation Z, 12 C.F.R. § 226.20(a) ("A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer."); 12 C.F.R. § Pt. 226, Supp. I. ("Changes in the terms of an existing obligation . . . will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation."); Begala v. PNC Bank, Ohio, Nat'l Ass'n, 163 F.3d 948, 951 (6th Cir. 1998) (noting

that the Commentary precludes considering changes in the terms of an existing obligation, short of cancellation of that obligation and substitution of a new obligation, to be a refinancing); Gordon v. Home Loan Ctr., LLC, No. 10-10508, 2011 WL 1261179, at *5 (E.D. Mich. Mar. 31, 2011) ("TILA does not impose new disclosure obligations upon those parties who execute a forbearance agreement where it does not completely replace the original mortgage.").

Finally, to the extent that Plaintiffs assert a TILA claim that Defendant made a loan to Plaintiffs that it knew Plaintiffs could not afford in violation of TILA's "Ability to Repay" provision, 15 U.S.C. § 1639c(a)(1), this claim also fails because this rule (1) did not become effective until January 2014 – after both Plaintiffs' original 2003 Promissory Note and critical 2011 Renewal Note; and (2) does not apply to a loan modification unless it is considered a refinancing under relevant law, which, as discussed above, the 2017 Modification Agreements, which are within TILA's statute of limitations, were not. See 78 Fed. Reg. 6408-01, 2013 WL 327442, at *6408.

Because these statutory bases for dismissal are clear, amendment of Plaintiffs' TILA claims would be futile. The Magistrate Judge also recommended that, after dismissing Plaintiffs' only federal claim, the Court exercise supplemental jurisdiction and rule on Plaintiffs' state law claims in the interests of judicial economy. (Doc. No. 49 at 16-26 and n.2) The Court may decline to exercise supplemental jurisdiction over a state law claim if it dismisses "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). However, "[w]hen all federal claims are dismissed before trial, the balance of

6

considerations usually will point to dismissing the state law claim[.] . . ." Id. at 952 (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)). Here, it is well in advance of trial. Plaintiffs' remaining claims (e.g., fraud, infliction of emotional distress) are those that Tennessee courts routinely and skillfully consider. Furthermore, they arise here in the context of the alleged negative treatment of Tennessee residents by a Tennessee bank; the State therefore has an interest in resolving such claims in the first instance. After weighing the relevant factors, the Court does not find substantial justification to depart from general rule of declining to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

In sum, this matter has run its course in federal court. The Court has allowed Plaintiffs every opportunity. The record reflects that Plaintiffs have received full and fair consideration by the Magistrate Judge, and now a *de novo* review of the Magistrate Judge's conclusions regarding Plaintiff's TILA claims. Both the Magistrate Judge and the Court have been sympathetic to Plaintiffs' economic situation. However, Plaintiffs have articulated no basis to extend this case in federal court. Accordingly:

1. Plaintiffs' Motion to Compel Disclosure (Doc. No. 53) is **DENIED**;

2. Plaintiffs' Motion for Deadline Extension (Doc. No. 50) is **DENIED**;

3. The Report and Recommendation (Doc. No. 49) is **APPROVED AND ADOPTED IN PART**.

4. Plaintiffs' Motion to Dismiss (Doc. No. 27) is **GRANTED IN PART**. Plaintiffs' Truth in Lending Act claims are **DISMISSED WITH PREJUDICE**. The Court **DECLINES TO EXERCISE JURISDICTION** over Plaintiffs' remaining state law claims, which are **DISMISSED WITHOUT PREJUDICE**.

5. Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. No. 39) is **DENIED**; and

6. Plaintiffs' Motion for Preliminary Injunction (Doc. No. 45) is **DENIED**.

This is a final order. The Clerk shall issue judgment in accordance with the Federal Rules of Civil Procedure and close the file.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE